OPINION
On September 17, 1996, appellee, Joel Bradley Benson ("Bradley"), filed a complaint for divorce in the Ashtabula County Court of Common Pleas against appellee, Penny Louise Benson ("Penny").[1] Appellant, Edwin N. Benson, is the father of Bradley and was a third-party defendant to the action below because he asserted a lien on thirty-one head of cattle that were part of the marital estate. A hearing was held on December 19, 1997, at which Bradley and Penny reached an agreement regarding division of marital property, including a provision that the thirty-one head of cattle would be sold as soon as possible by the Meadville Livestock Auction with the proceeds to be divided equally between them. The court issued a judgment entry on December 24, 1997, indicating that all pending issues had been settled.
On January 2, 1998, appellant's attorney sent a letter to Penny asserting that he had a lien on the cattle, pursuant to R.C. 1311.48, because he had fed and cared for them for 476 days and would commence proceedings to sell the cattle to satisfy the lien. On February 21, 1998, appellant published legal notice that he would offer the cattle for sale at the Meadville Livestock Auction to satisfy the lien for food and board for the cattle. On March 3, 1998, the trial court joined, on Penny's motion, appellant as a party and issued a temporary restraining order barring appellant from selling the cattle. The temporary restraining order stated:
 "* * * Edwin N. Benson is hereby enjoined and restrained from receiving, hiding, selling, disposing of, encumbering or in any other way interfering with the possession, use and funds resulting from the auction sale of 31 head of cattle heretofore owned and maintained by Plaintiff J. Bradley Benson, and Defendant, Penny Louise Benson.
 "* * * All of the said sales proceeds shall be held in escrow and subject to further order of the court."
 On November 9, 1998, the trial court issued a judgment entry, resulting from a hearing held on November 2, 1998, upon a motion to show cause filed by Penny against Bradley, that stated: "The court was informed that new party defendant, Edwin N. Benson, has withdrawn his claim upon the thirty-one cattle that were to be sold and the sale will proceed. Counsel will submit the judgment entry concerning the granting of the parties' divorce." On February 1, 1999, the trial court issued a final decree of divorce. It noted that ten of the cattle had died and ordered that "[a]n additional equivalent ten (10) head of cattle will be substituted to total the 31 head originally owned by the parties."
On February 12, 1999, appellant filed a motion for a new trial. On December 8, 1999, the court held a hearing on the motion. At the hearing, both appellant and Bradley testified that, in September 1996, appellant and appellees entered into an agreement for appellees to pay $1.50 per day per head of cattle in exchange for appellant feeding and caring for the cattle. No written agreement was presented as evidence of this arrangement nor was any evidence presented regarding payments made under the agreement. Bradley testified that appellees had stored livestock on appellant's property, which was adjacent to appellees', in the past but had provided labor in lieu of monetary payment. In response to questioning about his awareness of appellees' agreement regarding the sale of the cattle, appellant testified that he was unaware of it because he was not in the courtroom, although he was at the courthouse, on the day appellees entered into it. Bradley testified that the agreement existed prior to the divorce agreement, although he did not mention the agreement during the December 19, 1997 hearing. Penny testified that she had no knowledge that any such agreement was ever made. Appellant testified that he had not withdrawn his claim to money owed for the care of the cattle at the November 2, 1999, just his claim as to selling the cattle.On January 20, 2000, the trial court overruled appellant's motion for a new trial. The trial court wrote: "It is clear to the Court that [Bradley] and his father [appellant] had been operating in concert on the issue of the sale of the cattle. As a result, [Penny] should not sustain any economic loss due to ten of cattle apparently dying while the auction sale was delayed by [Bradley] and his father."
Appellant assigns the following as error:
 "The trial court erred when it denied new party defendant-appellant's motion for a new trial pursuant to Civ.R 59(A)(1), (6), (7), (9), and for good cause shown."
 The provisions of Civ.R. 59 (A), cited by appellant, read as follows:
 "A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:
 "(1) Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial;
 "(6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case;
"(7) The judgment is contrary to law;
 "(9) Error of law occurring at the trial and brought to the attention of the trial court by the party making the application; [and]
 "In addition to the above grounds, a new trial may also be granted in the sound discretion of the court for good cause shown."
 The denial of a motion for a new trial is within the sound discretion of the trial judge and will not be disturbed on appeal in the absence of a clear showing of abuse by the trial court. Len Ran, Inc. v. Mellott
(1990), 63 Ohio App.3d 123, 129, 577 N.E.2d 1185. Appellant argues that there are irregularities in the decision of the trial court because: it allowed appellees to split the proceeds of the sale of the cattle without paying appellant for the care he provided; the trial court ruled that there was no agreement for appellant to care for appellees' cattle, but nevertheless held him responsible for the loss of the cattle; it released appellees from their obligation to pay for the care of the cattle even though there was no evidence that appellant agreed to such a release, and; there was no evidence that appellant was responsible for the delay of the sale or the death of the cattle sufficient to require him to replenish the ten lost cattle.
It is clear that the trial court was not persuaded by the testimony of Bradley and appellant regarding the agreement to care for the cattle. The record supports the trial court's conclusion. Penny testified that she knew nothing about the agreement. Bradley never mentioned the agreement during the divorce proceedings and testified that in the past he had stored cattle on appellant's property in exchange for his labor. Appellant never mentioned the alleged agreement during the December 19, 1997 hearing. Thus, the trial court did not abuse its discretion in its determination that no agreement existed.
In effect, the trial court determined that if there were consideration due, it was already paid. Thus, there was a bailment for value and loss was the responsibility of the bailee, the appellant.
Appellant further argues that the trial court erred in holding him responsible for the ten dead cattle. The trial court explained that Penny should not sustain any economic loss due to ten head of cattle apparently dying while the auction was delayed by Bradley and appellant. Therefore, the court ordered that thirty-one head of cattle, including the substitute cattle due to the death of some of the original cattle, be placed for sale forthwith and the proceeds placed in escrow with appellee's counsel. Upon review of the record, we conclude that there is credible competent evidence that the trial court did not abuse its discretion in that appellant was a bailee for value and, thus, holding Bradley and appellant responsible for the ten dead cattle.
It is undisputed that appellant had been providing care to thirty-one head of cattle belonging to Penny and Brad Benson. Appellant interfered with the sale of the cattle by asserting a lien in January 1998, which was subsequently withdrawn in November 1998. Further, the record shows that appellant's counsel believed that appellant was aware of his responsibility for the ten dead cattle and did not object to replacing them.
During the hearing on the motions for new trial, on December 8, 1999, Attorney Bobulsky, counsel for Bradley, testified that all parties were submitted drafts of the judgment entry for their approval. Specifically, Attorney Bobulsky testified that, during a discussion among counsel for the parties, Attorney Piper, who represented appellant, indicated that some of the cattle had died but would be replaced. Bobulsky testified that, "* * * we agreed to incorporate that language since it did not in any way change Mr. Bradley Benson's obligations, and Mr. Noel Benson wished a clarification. But it didn't change the obligation to produce cattle and sell the cattle. Again, the change was made pursuant to discussions among counsel."
He further stated that: the proposed judgment entry was submitted to counsel for all parties; he waited for the period required by local rule for approval by them; he was never instructed by either counsel for Brad Benson or appellant that the judgment entry did not accurately reflect the agreement reached during the November 2, 1998 hearing; and the judgment was submitted to the court, as is the customary practice.
Further, Exhibit D to the December 8, 1999 hearing demonstrates that Attorney Kenneth Piper, then counsel for appellant, had received a revision of the judgment entry and requested the following addition to paragraph 10(A)(ii): "The parties acknowledge that 10 head of cattle have died. An additional 10 head of cattle will be substituted to total the 31 head originally owned by the parties."
Having concluded that no evidence was presented to show that the parties had entered an agreement to compensate appellant with money for the care he provided, the trial court's decision was not erroneous. Appellant has not demonstrated that the trial court erred in holding him responsible for the loss of the cattle, which he concedes were under his care.
Review of the record does not reveal an abuse of discretion by the trial court. Thus, the judgment of the Ashtabula Court of Common Pleas is affirmed.
 _______________________________________ WILLIAM M. O'NEILL
CHRISTLEY, J., concurs, NADER, J., dissents with Dissenting Opinion.
[1] For simplicity sake, we will refer to the appellees by their first names.